JOHN LEONARDI and FLORENCE LEONARDI, His Wife, Appellants, v. THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Respondent.

Second Department, March 23, 1942.

*Julius Zizmor*, for the appellants.

*Randolph H. Guthrie* [*George L. Trumbull* with him on the brief], for the respondent.

HAGARTY, J.   A check for $3,750 made to the order of plaintiffs and drawn on the Bank of Manhattan Trust Company of Jamaica, New York City, hereinafter referred to as the trust company, was deposited on June 6, 1930, by plaintiff Florence Leonardi with the Bank of Bay Biscayne, of Miami, Fla., hereinafter referred to as the bank, with this indorsement: " For deposit of Florence Leonardi & John Leonardi."   Plaintiffs had an account with the bank which at the time showed a credit balance of $54.50.   This check, together with others, amounting in all to the sum of $27,147.68, was mailed by the bank to defendant, its New York correspondent, with a " cash remittance letter " dated June 6, 1930, containing the printed notation:

" WE ENCLOSE CASH ITEMS FOR COLLECTION AND CREDIT.

" All items listed in this letter to be handled as Cash unless otherwise instructed.

" Items $10.00 and under No Protest.   Do not protest items bearing this stamp or similar authority of preceding endorser. Telegraph Non-Payment of Items $500.00 and over."

This letter, with its contents, was received by defendant at twelve-five A. M. on June ninth. The check cleared through the eight A. M. exchanges to the trust company and, sometime before eleven A. M. the amount was credited the bank by the defendant. Defendant's assistant cashier testified that, pursuant to custom, the trust company, after acceptance, was given opportunity to dishonor the check by three P. M. of that day and, upon failure to do so, the credit by the trust company became final and irrevocable as of that time. (See *Consolidated Nat. Bank* v. *First Nat. Bank*, 129 App. Div. 538; affd., 199 N. Y. 516.)

After the close of business on the following day, June tenth, the bank, being insolvent, failed to open its doors, and was taken over by the Comptroller of the State of Florida on the 11th day of June, 1930, and is now being liquidated under and by virtue of the laws of the State of Florida.

The bank owed defendant over $1,000,000. Defendant learned of the insolvency on June eleventh, at which time it set off as against this indebtedness the credits to the bank on its books in the sum of $257,458.81, inclusive of that represented by plaintiffs' check. This action is to recover against defendant on the ground that, by so setting off the indebtedness, it converted the proceeds of the check, which plaintiffs claim belong to them.

The issue here presented is whether or not, at the time defendant set off the credit to the bank on its books, as of June eleventh, a relationship of debtor and creditor existed between the bank and plaintiffs with respect to the amount of the check, in so far as concerns collection of the check and actual final payment thereof by defendant to the bank. If so, the status of plaintiffs is no different from that of all other depositors who relied on the credit of the bank; if not, defendant set off moneys intrusted to it as collecting agent not only of the bank but of plaintiffs themselves, and so converted the moneys.

The transaction is governed by the provisions of the Compiled General Laws of the State of Florida (§ 6834) to the effect that, when a check is deposited in a bank for credit or for collection, it shall be considered due diligence on the part of the bank in the collection thereof to forward it without delay according to the regular course of business of banks, and such forwarding bank shall only be liable, except in case of want of due diligence, " after actual final payment is received by it  *  *  *." The contract between plaintiffs and the bank was made in Florida and was to be performed there. In *Federal Reserve Bank* v. *Malloy* (264 U. S. 160) the Florida statute was held applicable in a case involving a deposit of a check in Florida and alleged negligence of a collecting bank without the State.

The parties are presumed to have contracted with reference to the Florida statute, the effect of which was to render defendant the subagent of plaintiffs in the collection of the proceeds of the check until actual final payment was made by defendant to the bank. (*Federal Reserve Bank* v. *Malloy, supra; Dakin* v. *Bayly,* 290 U. S. 143; *Florida Power & Light Co.* v. *Newsom,* 111 Fla. 154; 149 So. 621; *Andrews* v. *First Nat. Bank of Tampa,* 115 Fla. 67; 155 So. 143.) No agreement between the bank and the defendant without the consent of plaintiffs could alter this relationship, but the effect of the statute " might be avoided by agreement or by clear and certain custom known to the depositor * * *." (*Dakin* v. *Bayly, supra,* pp. 147, 148, 150.) In *Florida Power & Light Co.* v. *Newsom* (*supra,* p. 161) it is stated with respect to the statute that " it may be that such owner [of negotiable paper] could waive its application * * *."

While the language of the pass book issued by the bank to plaintiffs reiterates the effect of the statute, namely, that defendant until final actual payment remains the agent of plaintiffs for collection, the deposit slip used by plaintiffs in depositing the check with the bank contains the statement that " All items are credited subject to final payment in cash or solvent credits." The clear implication of this agreement, pursuant to which the deposit was made, is that a credit provisionally given upon deposit becomes final when the item is collected and final payment by way of a solvent credit is received by the bank. The method by which such credit was established between defendant and the bank upon collection of the item is obviously within the scope of the agency.

The undisputed proof is that final credit was given the bank by defendant as of the close of the business day of June ninth, in accordance with custom and the understanding of the banks, of which the cash letter is also evidence. Credit is the exclusive means of payment in ordinary banking practice. " The cash is not handled " and " No money passes." Here, the payment to the bank was by means of a final solvent credit, as the result of which the agency terminated and the relationship of debtor and creditor ensued between defendant and the bank. (*Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S. 50, 58; *Jennings* v. *U. S. F. & G. Co.,* 294 id. 216, 219, 220; *People* v. *City Bank of Rochester,* 93 N. Y. 582.) " In effect, the situation was then the same as if the defendant, receiving the money in the capacity of agent, had handed it over to the principals, and had received it back at once to be retained as a deposit." (*Carson* v. *Federal Reserve Bank,* 254 N. Y. 218, 230.)

In the absence of controlling Florida authority, we are of opinion that such credit established in favor of the bank was an actual final payment within the purview of the statute. (*Briggs* v. *Central Nat. Bank of City of N. Y.*, 89 N. Y. 182; *Matter of Bickford's, Inc.*, v. *Broderick*, 234 App. Div. 417; affd., 259 N. Y. 630; *King* v. *Bowling Green Trust Co.*, 145 App. Div. 398, 401, 402. Cf. Neg. Inst. Law, § 350-i.) In any event, the parties were permitted to and did agree upon payment by means of credit.

The result was that the agency of defendant and the bank had terminated and the relationship of debtor and creditor between plaintiffs and the bank ensued as of June ninth. In consequence, the defendant was entitled to set off the credit as against the general indebtedness of the bank to it, as of June eleventh, in accordance with the agreement between them to that effect.

Plaintiffs' indorsement "For deposit" on the check was restrictive and indicated that the forwarding bank was an agent for collection and not owner of the item. (*Soma* v. *Handrulis*, 277 N. Y. 223, 231, 232.) The operation of the statute achieved the same result. Pursuant to the indorsement, the check was deposited for collection and credit. When final payment was made by collection, the depositor became a creditor. (*Matter of Bickford's, Inc.*, v. *Broderick, supra.*)

A case almost identical in its facts with the one we are now reviewing was decided by the Supreme Court of Tennessee. (*Dean Tobacco Warehouse Co.* v. *American Nat. Bank*, 173 Tenn. 365; 117 S. W. [2d] 746.) It was there held that payment by a final credit after collection was "as much so as if defendant on the morning of January 18 had paid the forwarding bank the proceeds of the check in cash. It follows that had the collecting bank subsequently become insolvent instead of the forwarding bank, the loss would have fallen upon the forwarding bank rather than upon complainant."

It is immaterial to the result that the vice-president of the bank, as testified to by plaintiff Florence Leonardi, informed plaintiffs that they were not to draw against the check for eight days. The debtor and creditor relationship ensued immediately upon collection and credit. If plaintiffs agreed not to draw against the account for some arbitrary period, such arrangement was extraneous to transition of the relationship of the parties by collection and credit.

In the light of the foregoing views we are constrained to disagree with the holding in *Leonardi* v. *Chase Nat. Bank of City of New York* (11 F. Supp. 85; reversed on jurisdictional grounds, 81 F. [2d] 19; certiorari denied, 298 U. S. 677).

The judgment, and the order granting reargument and on reargument adhering to the determination which granted a motion for a directed verdict, should be affirmed, with costs.

Present — HAGARTY, CARSWELL, ADEL, TAYLOR and CLOSE, JJ.

Judgment, and order granting reargument and on reargument adhering to the determination which granted a motion for a directed verdict, unanimously affirmed, with costs.